**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**FR. MARK JAUFMAN and JOHN DOE(S),**

**Plaintiffs,**

**vs.**

**1:06-CV-1295 (NAM/DRH)**

**HOWARD A. LEVINE, WHITEMAN OSTERMAN & HANNA, LLP, INDEPENDENT MEDIATION ASSISTANCE PROGRAM and NEW YORK STATE DISPUTE RESOLUTION ASSOCIATION (NYSDRA),**

**Defendants.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| John A. Aretakis, Esq.<br>353 East 54th Street<br>New York, New York 10022-4965<br>*Attorney for Plaintiffs* | John A. Aretakis, Esq. |
| Dreyer Boyajian LLP<br>75 Columbia Street<br>Albany, New York 12210<br>*Attorney for Defendant Howard A. Levine* | William J. Dreyer, Esq. |
| Proskauer Rose LLP<br>1585 Broadway<br>New York, New York 10036<br>*Attorney for Defendant Whiteman Osterman & Hanna, LLP.* | Bertrand C. Sellier, Esq. |
| Hiscock & Barclay, LLP<br>50 Beaver Street<br>Albany, New York 12207<br>*Attorney for Defendant NYSDRA* | Mark W. Blanchfield, Esq. |

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

N A M

## INTRODUCTION

There are four motions presently before the Court: (1) Defendant Howard A. Levine (Levine) moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for failure to state a cause of action and pursuant to Rule 12(b)(1) to dismiss the amended complaint for lack of subject matter jurisdiction (Dkt. No.15); (2) Defendant New York State Dispute Resolution Association (NYSDRA) moves pursuant to Rule 12(b)(6) to dismiss the amended complaint for failure to state a cause of action (Dkt. No. 9); (3) Defendant Whiteman Osterman & Hanna LLP (Whiteman) moves for summary judgment pursuant to Rule 56 or dismissal of the complaint pursuant to Rule 12(b)(6) for failure to state a cause of action and Rule 12(b)(1) for lack of subject matter jurisdiction (Dkt. No. 16); and (4) Defendants Levine (Dkt. No. 19) and Whiteman (Dkt. No. 12) move pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the court's inherent authority for sanctions against plaintiffs' counsel. The Plaintiffs have opposed all motions (Dkt. No. 23).

The case *sub judice* was filed subsequent to a similar action in this District, *Sweringen v. New York State Dispute Resolution Association*, Civ. Action No. 1:05 -CV-428, for primarily the same relief. The *Sweringen* plaintiffs, like the plaintiffs herein allege that they were sexually abused by priests. In *Sweringen* action, this Court dismissed plaintiff's cause of action for fraud and denied the defendant's motion to dismiss the remaining causes of action for injunctive relief, breach of contract, violations of the New York State General Business Law §349, Executive Law §62(12) and General Business Law §22-A, negligence and breach of fiduciary duty. The plaintiffs in the *Sweringen* action and in the within action are represented by the same counsel, John Aretakis.

## FACTUAL BACKGROUND

In the amended complaint, plaintiffs allege they were sexually abused by priests as children. In support of their claims herein, plaintiffs make the following factual and legal averments: Defendant Levine is a former New York Court of Appeals Judge and Senior Counsel at Whiteman Osterman & Hanna, LLP. Defendant Levine developed a mediation program on behalf of the Roman Catholic Diocese of Albany (Albany Diocese) known as the Independent Mediation Assistance Program (IMAP). IMAP was intended to compensate victims of clergy sexual abuse and to investigate and mediate their cases or claims. Defendant Whiteman previously represented the Albany Diocese or its agencies including Catholic Charities or Albany Diocese run or controlled hospitals. Defendant Whiteman assisted with the development of IMAP and was paid by the Albany Diocese to administer IMAP. Defendant NYSDRA is involved in mediation and mediating services and was retained to administer IMAP. Defendant NYSDRA, *inter alia*, mediate disputes between individuals and the Albany Diocese involving childhood sexual abuse claims. Defendants are "legally and/or contractually" involved in a dispute resolution program on behalf of the Albany Diocese, "its agencies, employees, surrogates or their lawyers with respect to childhood sexual abuse by priests." NYSDRA's "own website . . ., or bylaws, regulations or policies", however, "state . . . that mediation by . . . NYSDRA is not an option in cases or claims involving child abuse".

In September of 2004, the program was publicly revealed as an entity that was "independent" of the Albany Diocese to "administer compensation and/or justice to victims of clergy sexual abuse". From September of 2004 to the present, defendants utilized print, television, internet and radio to advertise their efforts to mediate disputes between victims of childhood sexual abuse by priests and the Albany Diocese. The widespread and expensive advertising campaign is and was paid for and/or advanced by the Albany Diocese. The

advertisements represent that defendants NYSDRA and Levine, or its partners, surrogates, agents, and/or lawyers are "independent". Defendants, however, have a conflict of interest because the Albany Diocese pays Whiteman, which has represented the Albany Diocese in "litigation adverse to clergy sexual abuse victims", $350 per hour to administer, monitor or run IMAP and has set aside at least $500,000.00 to pay defendant's costs and all expenses incurred by IMAP. The defendants have refused to reveal any contracts or other agreements with "any of the parties, lawyers, agents or principals to the program."

Pursuant to agreements with the district attorneys in the fourteen counties that comprise the Albany Diocese, the Albany Diocese is obligated to tell victims of abuse to retain an attorney. Defendants "stand in the shoes of the Albany Diocese or is [sic] united in interest with the Albany Diocese in dealing with, or acting with regard to matters involving clergy sexual abuse claims or victims," but does not tell victims of abuse to retain an attorney. Consequently, victims have participated in IMAP without counsel, and have been exploited or taken advantage of by defendants. At the conclusion of mediation services, the victims of abuse may be requested to sign releases, confidentiality documents and other legal and potentially binding documents.

Another example of the "unfair and unjust" nature of the program is that defendants, their employees, agents, attorneys, spokesmen, partners, and/or principals "have charged themselves with being and having discretionary authority in determining what matters go to or are allowed to proceed to mediation and what matters are delayed or do not go to mediation as well as what the eventual arbitrated financial settlements are or will be between the parties."

Lisa Hicks, the executive director of the defendant NYSDRA, falsely advised the plaintiff Jaufman, or his representatives, in a meeting on January 31, 2005 that "the defendant NYSDRA was permitted to be involved in the program and the program was appropriately vetted by the

defendant NYSDRA and did not involve fraud, deception or a conflict of interest".

Plaintiff Jaufman joined IMAP in January of 2006 but prior to participating, the plaintiff had "direct communication from and to the defendants and its representatives". The John Doe plaintiffs, who were victims of childhood sexual abuse by priests, have also participated in the program.

As a result of the above, plaintiffs seek injunctive relief directing defendants to cease mediating claims involving childhood sexual abuse by Albany Diocese priests or compelling defendants to conform to public, web site and/or advertised representations not to engage in false advertising (first cause of action). Plaintiffs also allege: fraud (second cause of action); violations of the New York State General Business Law § 349 and 22-A, and of the Executive Law 62(12) (third cause of action); breach of oral contract (fourth cause of action); negligence (fifth cause of action); breach of fiduciary duty (sixth cause of action); and legal malpractice against Whiteman and Charlotte Carter (seventh cause of action).

**JURISDICTION**

Plaintiffs allege that the Court has diversity jurisdiction over this action because Jaufman is a citizen of California, defendants do business in the State of New York, the John Doe plaintiffs reside or have citizenship in "different states", and the amount in controversy exceeds $75,000.

**DISCUSSION**

**STANDARD FOR SUMMARY JUDGMENT**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant



N A M

has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id*. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1(a)(3), the defendant Whiteman has submitted a Statement of Material Facts in support of the motion for summary judgment. (Dkt. No. 16) In response, plaintiffs have filed a Statement of Material Facts. (Dkt. No. 24) The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. *Lore v. City of Syracuse*, 2007 WL 655628, at *2 (N.D.N.Y. 2007). It does not, however, include attorney's affidavits. N.D.N.Y.L.R. 7.1(a)(3); *Lore*, 2007 WL 655628, at *2. Each statement of material fact by a movant or opponent must be followed by citations to evidence which would be admissible as required by Federal Rule of Civil Procedure 56(e). *Burroughs v. Chase Manhattan Bank, N.A.*, 2004 WL 350728, at *2 (S.D.N.Y. 2004).

A movant's factual statements that are properly supported and are not specifically denied or admitted in compliance with the Local Rules will be deemed admitted. *Lussenhop v. Clinton County, New York*, 2007 WL 1063650, at *1 (N.D.N.Y. 2007); *see also Baptista v. Onondaga County Dep't of Corrs.*, 2007 WL 911854, at *2 (N.D.N.Y. 2007); *see* N.D.N.Y.L.R. 7.1(a)(3) ("[A]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis omitted). Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion. *Jackson v. Broome County Corr. Facility*, 194 F.R.D. 436, 437 (N.D.N.Y. 2000) (. . . it would be manifestly unjust to require the non-movant to proceed in a summary



N A M

judgment motion in which the movants' non-compliance has so severely prejudiced his ability to respond as the Local Rules require).

The Statement of Material Facts submitted by the defendant Whiteman (Dkt. No. 16) contains only four (4) statements that are supported by the Record. The remaining twenty (20) paragraphs/statements do not contain citations to the Record. These factual averments go to the crux of the issues raised in the motion for summary judgment. In those paragraphs/statements, counsel cites only to the "Declaration of Bertrand C. Sellier, dated December 27, 2006" and to Exhibits annexed to that Declaration (transcripts from "meetings" held prior to the commencement of this action and a letter which is not in admissible form). The averments contained in the attorney "declaration" and exhibits attached thereto will not be considered for the purposes of this motion.

The plaintiffs have submitted a Statement of Material Fact as required, but it does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of movant's assertions in matching numbered paragraphs". *See* N.D.N.Y.L.R. 7.1(a)(3); *see also Lussenhop*, 2007 WL 1063650, at *1 (N.D.N.Y. 2007); *see also Meaney v. CHS Acquisition Corp.*, 103 F.Supp.2d 104, 108 (N.D.N.Y. 2000).

Accordingly, the Court finds that defendants did not set forth a Statement of Material Facts in compliance with the Local Rules. Therefore, the defendants motion for summary judgment is denied, without prejudice at this time.

**STANDARD FOR RULE 12(B)(1) MOTION TO DISMISS**

In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" *Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), though "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may include evidence outside the pleadings, e.g., affidavit(s) or otherwise competent evidence. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). As the party "seeking to invoke the subject matter jurisdiction of the district court", plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996).

Defendants assert that the Court lacks jurisdiction over the allegations of the John Doe(s) plaintiff(s) and move to dismiss all claims asserted by John Doe(s) as the plaintiff(s) failed to obtain Court permission to proceed anonymously. Defendants further assert that the John Doe(s) plaintiff(s) should not be granted retroactive permission to proceed anonymously.

Failing to bring an action in the name of the real party in interest does not immediately divest a district court of jurisdiction. *EW v. New York Blood Center*, 213 F.R.D. 108, 109 (E.D.N.Y. 2003) (emphasis omitted).

"[I]n special circumstances, a party to a civil action can obtain permission from the court to proceed under a pseudonym". *EW*, 213 F.R.D. at 110 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir.1993)). While the Second Circuit has yet to address the issue, the cases make clear the decision whether to allow a plaintiff to proceed anonymously rests within the sound discretion of the court. *EW*, 213 F.R.D. at 110 (citing *Doe v. Smith*, 189 F.R.D. 239, 242 (E.D.N.Y.1998), vacated on rehearing and modified on other grounds, 105 F.Supp.2d 40, 45 (E.D.N.Y.1999).

In exercising its discretion, the ultimate question is "whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of

openness in judicial proceedings.' " *EW*, 213 F.R.D. at 110 (citing *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir.1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981)). In particular, the "plaintiff's right to privacy and security [must be balanced] against the dual concerns of (1) public interest in identification of litigants; and (2) harm to the defendant stemming from falsification of plaintiff's name." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F.Supp. 72, 73 (D.R.I.1992).

The amended complaint filed on behalf of the John Doe(s) plaintiff(s) does not comply with Rule 10(a) of the Federal Rules of Civil Procedure. Accordingly, the defendants' motion to dismiss the amended complaint is granted in part and denied in part. The John Doe(s) plaintiff(s) are permitted to seek the permission of the Court to file a second amended complaint anonymously. *See Kalsson v. U.S. Fed. Election Comm'n*, 356 F.Supp.2d 371, 372 (S.D.N.Y. 2005).

**STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS**

Defendants further move for dismissal of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addressing defendants' motion to dismiss, the Court accepts as true all of the factual allegations in the amended complaint and draws inferences from those allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

It is well settled that the Court may not look to evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."). The court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference". *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). In the amended complaint, the plaintiffs refer to Exhibits "A", "B" and "C" and attempt to incorporate the same by reference. Exhibits "A" and "B" were previously annexed to the original complaint (Dkt. No. 1). No exhibits were attached to the amended complaint, however, construing the allegations liberally, the Court has considered only Exhibits "A" and "B" in addressing the instant motion. *Thomas v. Goord*, 215 F. App'x 51, 54 (2d Cir. 2007); *see also Daiei Trading Co., Inc. v. Williams Rice Milling Co.*, 30 F. App'x 13, 14 (2d Cir. 2002). Exhibit "C" which is alleged to be "a document widely distributed to the public and to the media on September 22, 2004 describing and explaining the IMAP program", was not annexed to the original complaint and is not annexed as an exhibit to the amended complaint. As such, Exhibit "C" and the contents of the purported document are not considered for the purposes of these motions.[1]

**A. Fraud (Second Cause of Action)**

[1] The plaintiffs also refer to the content and substance of various publications in the amended complaint including the *Albany Times Union*, *Daily Gazette*, *The Evangelist* and "other media outlets". The plaintiffs also refer to a "booklet" published by the defendants and disseminated to the public in September of 2004. However, the plaintiffs did not annex any of the aforementioned publications to the original complaint or amended complaint. Therefore, the allegations relating to the content of these publications will not be considered for the purposes of these motions.

Defendants move to dismiss the second cause of action on the basis that plaintiffs failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, defendants allege that the plaintiffs have failed to adequately allege reasonable reliance upon the alleged misrepresentations, damages or scienter.[2]

Fed. R. Civ. P. 9(b) sets forth a heightened pleading standard for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Under New York law, for a plaintiff to prevail on a claim of fraud, he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, (4) reasonable reliance on the part of the plaintiff, and (5) that causes damage to the plaintiff. *Lerner,* 459 F.3d at 291 (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).

In the amended complaint, plaintiffs allege:

> The plaintiff Jaufman entered the IMAP program and relied to his detriment on the false statement made by the defendants, therefore he has standing to bring this action. (Am. Compl. at ¶ 141).
>
> The plaintiffs reasonably relied to their detriment on the false and deceptive statements and advertisements made by the defendants and the plaintiffs are and continue to be disadvantaged and prejudiced by the false advertising, false statements and fraud made by the defendants. (Am. Compl. at ¶ 148).

[2] Similar arguments were made by counsel for the defendants in the *Sweringen* action and as such, an equivalent analysis is applied to this motion.

While participating in and being involved in and with their program, plaintiff came to learn the following:

> a) Defendant NYSDRA has rules, policies and bylaws that prohibit the defendant NYSDRA from being involved with childhood sexual abuse issues/cases;
>
> b) Defendants are not independent;
>
> c) Defendants are being paid by the Albany Diocese, who also controls and supervises the defendant;
>
> d) Defendant NYSDRA has a relationship with IMAP and its principals and are controlled or supervised by the defendants Levine and Whiteman; and
>
> e) The defendants' advertisements and covenants were false and known to be false when made. (Am. Compl.¶ 150).

The plaintiff Jaufman was solely and exclusively motivated to enter the defendant's program due to the public advertisement and public statements that defendants were independent of the Albany Diocese who has failed miserably at reaching out to victims of abuse. (Am. Compl. at ¶ 154).

In deciding to join and participate in the mediation program, the plaintiff specifically relied on the defendants' representations that the program they were implementing or participating in was independent and that they were adequately trained and qualified for such work. (Am. Compl. at ¶ 155).

Plaintiffs allege, *inter alia*, that the defendants made fraudulent statements claiming the program is independent. The plaintiffs refer to an advertisement, annexed as Exhibit "A" to the original complaint (Dkt. No.1), arguing that the NYSDRA publicly disseminates information claiming that it is "independent" when it is not. Plaintiff Jaufman further alleges that Lisa Hicks, the executive director of NYSDRA made false and fraudulent statements in a meeting on January 31, 2005 "to his representatives" concerning the conflict of interest. Plaintiffs argue that these public advertisements and statements fraudulently induced the plaintiffs to participate in the program.

Even assuming the plaintiffs satisfied the Rule 9(b) pleading requirements concerning the time, place, speaker and the content of the alleged misrepresentation, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990), the cause of action for fraud must be dismissed as plaintiffs have failed to adequately allege scienter on the part of the defendants.[3]

Allegations of scienter "are not subjected to the more exacting consideration applied to the other components of fraud". *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 143 (2d Cir. 1991) (quoting *Ouaknine*, 897 F.2d at 81). Despite Rule 9(b)'s lower standard for scienter, the Court has stated that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.' ". *Chill*, 101 F.3d at 267 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). Plaintiffs still have the "burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter". *Chill*, 101 F.3d at 267 (quoting *Cohen v. Koenig*, 25 F.3d 1168,1173 (2d Cir. 1994)). Plaintiffs must at a minimum, allege facts that give rise to a strong inference of fraudulent intent. *Siben v. Am. Airlines, Inc.*, 913 F.Supp. 271, 278 (citing *Breard*, 941 F.2d at 144).

A plaintiff can establish a strong inference of fraudulent intent in two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill*, 101 F.3d at 267 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)).

[3] The Court does not need to address the defendants' arguments with respect to whether or not the knowledge of counsel is imputed to the client as the complaint lacks the necessary allegations with respect to scienter.

Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. *Shields*, 25 F.3d at 1130. General allegations that the defendants acted in their economic self-interest are not enough. *Ganino v. Citizens Utilities, Co*., 228 F.3d 154, 170 (2d Cir. 2000) (citing *Shields*, 24 F.3d at 1130) (motive allegation that the defendants concealed and misrepresented the corporations' financial condition were common to all corporate executives too generalized to demonstrate scienter). Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "Although the Second Circuit has not held that the desire to consummate a corporate transaction never can be a motive sufficient to warrant an inference of fraud, in all the circumstances, such a weak motive does not sufficiently raise an issue of clear and convincing scienter". *Pfizer, Inc. v Stryker Corp*., 2005 WL 44383, at *4 (S.D.N.Y. 2005); *see also* *Rothman v. Gregor*, 220 F.3d 81, 93 (2d Cir. 2000).

The requisite inference of intent "may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Albert Fadem Trust v. Citigroup, Inc*., 165 F. App'x 928, 930 (2d Cir. 2006); *see also Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.2000) (internal cross-references omitted).

A plaintiff in a fraud action may also plead scienter "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill*, 101 F.3d at 267 (quoting *Acito*, 47 F.3d at 52 (quotation omitted)). The Second Circuit has held that "[r]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme

departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Chill*, 101 F.3d at 269, (quoting *Roth v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978)) (alteration in original and quotation omitted), op. am., Nos. 77-7104, 77-7124, 1978 WL 4098 (2d Cir. May 22, 1978), cert. denied, 439 U.S. 1039 (1978).

In this case, plaintiffs allege the following in the Amended Complaint:

> . . . The defendants have made and will continue to make substantial fees and monies for its involvement and/or creation or administration of the program. (Am. Compl. at ¶81).
>
> . . . The defendants wanted to deceive and induce victims of clergy abuse to use or participate in its program. . .". (Am. Compl. at ¶92).
>
> . . . The defendants' scienter and motive is to try to advance the interests of its principal, to generate fees and to aid the Albany Diocese in appearing to proactively resolve their issues. The defendants have acted to attempt to advance the interests of the Albany Diocese and these efforts are designed to curtail the leaving [sic] the church of parishioners, to maintain contributions, to restore credibility and trust in the church and to protect priests with predatory pasts due to the priest shortage". (Am. Compl. at ¶93).
>
> The defendants are making a substantial amount of money from its client or principal, the Albany Diocese in implementing, creating and/or being involved with the IMAP program, as wells [sic] as generating enormous publicity and goodwill for its principal. The intent and scienter of the defendants are evident due to its profit motive, widespread publicity and appearing to act in the public good. (Am. Compl. at ¶157).

The amended complaint does not provide facts sufficient to infer scienter and contains nothing more than conclusory allegations. The plaintiffs repeatedly state that the defendants were motivated to "assist the Albany Diocese" and "advance the interests of its principal, to generate fees and to aid the Albany Diocese in appearing to proactively resolve their issues". These allegations do not infer a "concrete benefit" to any of the named defendants. Plaintiffs have failed to allege that defendants were motivated by anything other financial gain. The Court is unable to infer scienter based upon the alleged motive and opportunity. The amended complaint

is also devoid of any allegations of recklessness, conscious misbehavior or conduct which is highly unreasonable on the part of the defendant. Plaintiffs fail to allege significant facts from which to infer scienter, and therefore, do not meet their burden under Rule 9(b). *Sloane Overseas Fund, Ltd. v. Sapiens Int'l. Corp., N.V.*, 941 F.Supp. 1369, 1382 (S.D.N.Y. 1996) (citing *In re Integrated Resources Real Estate Ltd. Partnerships Securities, Litigation*, 815 F.Supp. 620, 670 (S.D.N.Y.1993)). Accordingly, defendants' motion to dismiss the second cause of action is granted.

**B. N.Y. Gen. Bus. Law and N.Y. Exec. Law (Third Cause of Action)**

Plaintiffs base their third cause of action on allegations of deceptive business practices. The complaint alleges:

> Lisa Hicks, the Executive Director of the defendant NYSDRA, publicly stated at a press conference with her principals, partners, or lawyers that: "The mediators are not an advocate for one party over another, but support each other in using the process to speak the truth, seek understanding and ask for what is wanted to begin or further the healing process." (Am. Compl. at ¶198).

> The defendant NYSDRA, through Ms. Hicks, also falsely and deceptively claimed she was a neutral third party in the process in the September 23, 2004 Daily Gazette article. (Am. Compl. at ¶199).

> The fraudulent statements were published and made by the defendant in NYSDRA . . . in publications including but not limited to The Evangelist, the Times Union, The Gazette, The Record and other such newspapers from September 23, 2004 to October 23, 2004 and continuing to the present in some publications . . . . (Am. Compl. at ¶200).

> [Defendant's program] also has been described as a public relations driven fraudulent and deceptive program in an effort at restoring public trust and confidence to a church or diocese shaken . . . by numerous revelations of sexual abuse of children by clergy . . . . (Am. Compl. at ¶206).

> The fraudulent program involving the defendant NYSDRA is not a gratuitous program, but one which deals in the resolution of legal claims with the execution of settlement funds, releases, confidentiality agreements and other such legal agreements attendant to such legal claims . . . . (Am. Compl. at ¶207).

The defendants' fraud proximately caused the plaintiffs damages. (Am. Compl. at ¶209).

Defendants argue that the complaint fails to state a claim of deceptive trade practices because plaintiffs fail to allege how they have been injured. Defendants further allege that the wrong the complaint alleges is not a "consumer-type" transaction that "effects" [sic] the public.

As a threshold matter, plaintiffs claiming the benefit of General Business Law § 349 - whether individuals or entities - must charge conduct of the defendant that is consumer-oriented. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Plaintiff need not show that the defendant committed the complained-of acts repeatedly, but instead must demonstrate that the acts or practices have a broader impact on consumers at large. *Oswego*, 85 N.Y.2d at 25. If a plaintiff meets this threshold, a prima facie case may then be established by proving that defendant is engaging in an act or practice that is deceptive in a material way and that plaintiff has been injured by it. *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 321 (1995). The plaintiff must prove actual injury as a result of the deceptive act but not necessarily pecuniary harm. *Bildstein v. MasterCard Int'l Inc.*, 329 F.Supp.2d 410, 413 (S.D.N.Y. 2004) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)).

Plaintiffs allege that the conduct of the defendant misinforms the public and encourages persons to become involved with the program. Plaintiffs' allegations do not describe a practice unique to plaintiff, or a "single-shot transaction". *Oswego*, 85 N.Y.2d at 26 (quoting *Geneseco Entm't v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y. 1984)). While it may become clear that the activities at issue were not directed at consumers, *see Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 (S.D.N.Y. 1988) (dismissing § 349 claim because the plaintiffs did not

"assert injury to consumers or to the public interest, but to a class of independent insurance brokers"), and that plaintiffs can prove no damages beyond deception, s*ee Small v. Lorillard Tobacco Co*., 94 N.Y.2d 43, 56 (1999) (finding that the plaintiffs, who "set[] forth deception as both act and injury," failed to show actual harm as required by § 349), the Court cannot say, at this stage of the litigation, that plaintiffs can prove no set of facts in support of their claim of deceptive business practices. *Binder v. Nat'l Life of Vermont*, 2003 WL 21180417, at *6 (S.D.N.Y. 2003) (at the pre-discovery phase, in the context of this dismissal motion, the claimed conduct may be said to fall within the parameters of an unfair or deceptive practice).

Although the statute was not intended to turn a simple breach of contract into a tort, the plaintiff has come forward with sufficient evidence that the claimed fraudulent behavior is repetitive or capable of repetition and that defendants' practices may have an impact upon similarly situated consumers. *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 148 (2d Dep't 1995).

Thus, defendants' motion to dismiss the third cause of action is denied.

**C. Oral Contract (Fourth Cause of Action)**

Plaintiff Jaufman bases his fourth cause of action on allegations of breach of oral contract. The complaint alleges:

> The defendants covenanted to the plaintiffs [sic] and victims of abuse that they were able to be involved in the program and that same had been properly vetted when in fact it was not properly vetted and the program was not able to be administered or involved in by the defendant NYSDRA. (Am. Compl. at ¶ 212).
>
> The defendants also covenanted to the plaintiffs [sic] and victims of abuse in general that the defendants would not be involved in a program if it involved a conflict of interest, which it clearly does. (Am. Compl. at ¶ 213).
>
> Defendants stated that they would not have become involved or partnered with this program if a conflict of interest was involved, if there was fraud or if it was deceptive. (Am. Compl. at ¶ 214).

> The oral contract made by the defendants to the plaintiffs [sic] may also be illusory or fraudulent in that the defendant and their principals, agents and attorneys have unfettered and unilateral discretion implementing and administering the program, and this is manifestly unfair, unjust, deceptive, undisclosed and indicative that a conflict of interest exists. (Am. Compl. at ¶ 215).
>
> Since the program involving the defendant s is fraudulent, deceptive and has a conflict of interest, the defendant NYSDRA breached its contract with the plaintiffs [sic]. (Am. Compl. at ¶ 216).
>
> The plaintiff Jaufman was damaged by the breach of contract by engaging in the program initiated by the defendants and its principals, and then having nothing happen that was promised by the defendants and their agents. (Am. Compl. at ¶ 217).
>
> The consideration given by the plaintiff is that plaintiff Jaufman took no other actions to advance his claim during the period of time that Levine, IMAP and/or NYSDRA reviewed, investigated or mediated. (Am. Compl. at ¶ 219).
>
> Further consideration given by the plaintiff Jaufman was in traveling across country to cooperate with the defendant or its agents, in having repeated phone and other contact, with have to repeatedly tell the painful story of his abuse and being deceived, delayed and made to feel upset, anxious and requiring further therapy. (Am. Compl. at ¶ 222).
>
> The plaintiff Jaufman performed fully his obligations pursuant to the contract and relied to his detriment for the defendants to similarly act. (Am. Compl. at ¶ 225).
>
> Said contract contained offer and acceptance and good [sic] valuable and sufficient consideration. (Am. Compl. at ¶ 227).
>
> The defendants breached its oral contract with the plaintiffs causing the plaintiffs [sic] damages, including consequential damages, legal fees and monetary damages. (Am. Compl. at ¶ 228).

Defendants move to dismiss this cause of action for failure to state a claim on the basis that the complaint does not indicate how the plaintiff "performed" under the purported contract. Defendants further assert that plaintiff does not set forth facts establishing that he gave consideration to form a contract or that they sustained damages as a result of the defendants

alleged breach[4]. In the *Sweringen* action, the defendant moved for similar relief with respect to the breach of contract cause of action. The Court applies the same reasoning and analysis to the pleadings with respect to this motion.

To state a claim for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Harsco Corp. v. Sequi,* 91 F.3d 337, 348 (2d Cir. 1996); *Tagare v. Nynex Network Sys. Co*., 921 F.Supp. 1146, 1149 (S.D.N.Y. 1996). *See also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1235 (1990). Under the relaxed pleading requirements applicable in federal court, a plaintiff need not allege separately each element. Fed. R. Civ. P. 8(a)(2). Instead, it is enough that plaintiff comply with the requirement that the pleading put defendant on notice of the grounds for which plaintiff seeks relief. *Coddington v. Adelphi Univ.*, 45 F.Supp.2d 211, 218 (E.D.N.Y. 1999); Fed. R. Civ. P. 8(a)(2). Plaintiff must simply provide "a short and plain statement of the claim[ ] showing that [it is] entitled to relief." *Bridgeway Corp. v. Citibank, N.A.*, 132 F.Supp.2d 297, 305 (S.D.N.Y. 2001) (denying motion to dismiss a contract claim where the plaintiff provided a "short and plain statement" of the existence of an agreement, performance by the plaintiff, breach of the agreement by the defendant, and damages). Even where the complaint is conclusory, the Court has held:

> [t]he breach of contract claim as pleaded in the complaint is vague and conclusory and, at best, inartfully drafted. Indeed, the plaintiff does not describe the contract or contracts other than to say agreements existed between it and Mohawk. The plaintiff does not allege whether these agreements are written or oral, when they were made, the length of time they covered, the quantity of carpets involved, or any other terms. Indeed, discovery and summary judgment motions may determine that no agreements or contracts existed.

[4] Plaintiffs Memorandum of Law does not address the breach of contract cause of action and offers no legal authority or factual argument in opposition to defendants' motions.

> However, reading the complaint liberally and drawing all inferences in favor of the plaintiff, the Court finds that at this stage, the complaint provides the short and plain statement that Fed. R. Civ. P. 8 requires to provide notice of the ground upon which relief is sought.

*Designers North Carpet, Inc. v. Mohawk Indus., Inc*., 153 F.Supp.2d 193, 197 (E.D.N.Y. 2001) (citation omitted).

As a matter of pleading, the prevailing rule is that consideration need not be pled in the complaint, and that lack of consideration is best treated as an affirmative defense. *Thomas H. Lee Equity Fund V, L.P. v. Bennett*, 2007 WL 950133, at *2 (S.D.N.Y. 2007) (citing *Palmer v. A. & L. Seamon, Inc*., 1995 WL 2131, at *2 (S.D.N.Y. Jan. 3, 1995)) (denying motion to dismiss for failure to plead consideration because it "is in the nature of an affirmative defense rather than a neglected pleading requirement as urged by defendant.").

Under New York law, "[i]t is well established that the 'slightest consideration is sufficient to support the most onerous obligation' and that the courts are not to inquire into the adequacy of consideration." *Cont'l Energy Corp. v. Cornell Capital Partners, L.P.*, 2005 WL 3543972, at *2 (S.D.N.Y. 2005) (quoting *Caisse Nationale de Credit Agricole v. Valcorp, Inc*., 28 F.3d 259, 265 (2d Cir.1994)). "Generally, parties are free to make their own bargains, and, absent a claim of fraud or unconscionability, it is enough that something of real value in the eye of the law was exchanged." *Cont'l,* 2005 WL 3543972, at *2 (quoting *Ferguson v. Lion Holdings, Inc.*, 312 F.Supp.2d 484, 494 (S.D.N.Y.2004)) (internal citations and quotations omitted). As the New York Court of Appeals explained, " '[i]t is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him.'" *Granite Partners, L.P. v. Bear, Stearns & Co. Inc*., 58 F.Supp.2d 228, 252 (quoting *Weiner v. McGraw-Hill, Inc*., 57 N.Y.2d 458, 464 (1982)).

Applying New York law and the liberal pleading requirements of FRCP 8(a)(2) and drawing all inferences in favor of the plaintiff, the court holds that the plaintiff has sufficiently plead a claim for breach of contract. *Designers*, 153 F.Supp.2d at 197. The plaintiff has provided a "short and plain statement" of the existence of an agreement, performance by the plaintiff, breach of the agreement by the defendant and damages. *Bridgeway Corp*., 132 F.Supp.2d at 304. Further, dismissal based upon inadequacy of consideration is not appropriate at this time. *Granite*, 58 F.Supp.2d at 256. Accordingly, defendants' motion to dismiss the fourth cause of action is denied.

**D. Negligence (Fifth Cause of Action)**

Defendants argue for dismissal of plaintiff Jaufman's negligence claims on the basis that the defendants did not owe a duty to the plaintiff and further that the amended complaint does not allege that defendants' negligence proximately caused damages to plaintiff.[5]

In this case, the complaint alleges that:

> The defendants having instituted and set out a program which involved the plaintiffs [sic], had a duty to act reasonably, and pursuant to its own rules, regulations, bylaws, guidelines, policies and relevant statutory law. (Am. Compl. at ¶¶231).
>
> The defendants therefore had a duty that ran to the plaintiff Jaufman and that duty stemmed from relationship [sic] and dealings by and between the parties. (Am. Compl. at ¶ 233).
>
> The defendants breached their duty of care and proximately caused damages to the plaintiff Fr. Mark Jaufman that were reasonably foreseeable. (Am. Compl. at ¶ 234).
>
> The defendants' own breach of their own rules, regulations, policies, bylaws and guidelines is evidence of the defendant's negligence. (Am. Compl. at ¶ 235).
>
> The defendant NYSDRA has otherwise acted carelessly and with a wanton disregard to the plaintiffs [sic] and caused foreseeable damages to the plaintiff. (Am. Compl.

[5] The plaintiffs do not address the defendants' motion to dismiss the negligence cause of action and offers no legal authority or factual argument in opposition to defendants' motion.

at ¶ 236).

To establish a *prima facie* case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997).

A finding of negligence must be based on a duty and a breach of that duty and if "the defendant owes no duty to the plaintiff, the action must fail." *Dagen v. Marriott Int'l Inc.*, 2006 WL 3728344, at *3 (N.D.N.Y. 2006) (quoting *Darby v. Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001)). At this stage in the litigation, the Court must accept as true all of the allegations in the complaint and view them in the light most favorable to plaintiff. *Dagen*, 2006 WL 3728344, at *3 (citing *Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr.*, 180 F.Supp.2d 387, 390 (N.D.N.Y. 2001)) .

Defendant Whiteman argues that the negligence claim fails because "there is no duty owed by a law firm hired by a religious institution to administer a voluntary dispute resolution program to participants in that program". A duty of care with respect to non-clients may arise when: 1) the attorney is aware that his statement "is to be used for a particular purpose;" 2) a "known" third party relies "on the statement in furtherance of that purpose;" and 3) there is "some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Hughes v. BCI Int'l Holdings, Inc.*, 452 F.Supp.2d 290, 317 (S.D.N.Y. 2006) (citing *Prudential Ins. Co. of Am. v. Dewey, Ballantine*, 80 N.Y.2d 377, 384 (1992)) (internal citation omitted).

While it may become clear that plaintiff cannot produce evidence demonstrating negligence on the part of the defendants, or that he was damaged by the alleged negligence, at this

stage, plaintiff need only give "fair notice of the basis" for his claims. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Thus, the Court cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Accordingly, defendants' motion to dismiss the fifth action is denied.

**E. Breach of Fiduciary Duty (Sixth Cause of Action)**

Defendants assert that because plaintiff Jaufman failed to allege both the existence of a fiduciary relationship and an identifiable loss, the sixth cause of action for breach of fiduciary duty must be dismissed. The plaintiff, Jaufman, alleges:

> The plaintiff placed his full trust and reliance on the defendant and its program and the fiduciary relationship was established when the plaintiff began the defendants' program and by placing his faith and trust in same. (Am. Compl. at ¶ 241).
>
> The defendants acted as neutral mediators and investigators of the plaintiff's claims and as such acted in fiduciary relationships with the plaintiff. (Am. Compl. at ¶ 243).
>
> The plaintiff Jaufman was damaged by the breach of fiduciary duty by engaging in the program initiated by the defendants and their principals, and the [sic] having nothing occur that was promised by the defendant and their agents. (Am. Compl. at ¶ 245).

The elements of a cause of action for knowing participation in a breach of fiduciary duty are: (1) breach of a duty owed to plaintiff by a fiduciary; (2) defendant's knowing participation in the breach; and (3) damages. *Diduck v. Kaszuchi & Sons Contractors Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992). "[A] plaintiff alleging breach of fiduciary duty . . . is not required to meet the higher standard of loss or proximate causation." *Diduck*, 974 F.2d at 284.

A claim of breach of fiduciary duty requires a finding that a fiduciary relationship existed between the parties. *See Flickering v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991). Moreover, plaintiff must allege a relationship of trust or special confidence imposing

obligations beyond the express agreements between the parties. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). The Second Circuit has found a fiduciary relationship even where the relationship is informal so long as it can be "readily seen that one party reasonably trusted another." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150-151 (2d. Cir. 1993) (noting that relationships such as those between priest and parishioner, bank and depositor, majority shareholder and minority shareholder, and close friends and family members, generally give rise to fiduciary duties). However, there is generally no fiduciary relationship between sophisticated parties involved in an arm's length transaction. *Brass*, 987 F.2d at 150.

Plaintiff Jaufman's allegations are sufficient, at this time, to survive a motion to dismiss. The plaintiff has alleged the existence of a relationship based upon superior knowledge and trust. The parties to this action are not “sophisticated parties” negotiating an “arm’s length transaction”. Failure to allege an identifiable loss is not fatal to the claim as it is well established that to state a claim for breach of fiduciary duty, a plaintiff need not allege damages to itself. *Zackiva Commc’n Corp. v. Horowitz*, 826 F.Supp. 86 (S.D.N.Y. 1993). Accordingly, defendants’ motion to dismiss the sixth cause of action is denied.

**F. Legal Malpractice (Seventh Cause of Action)**

Plaintiff Jaufman has alleged malpractice as against Levine, Whiteman and Charlotte Church of IMAP. In a claim for attorney malpractice, under New York law, a plaintiff must plead: (1) the existence of an attorney-client relationship or assumption of a duty in connection therewith; (2) that the attorney was negligent; (3) that the alleged negligence was the proximate cause of plaintiff's loss; and (4) that actual and ascertainable damages were sustained. *Hwang v. Biermana*, 206 A.D .2d 360 (2d Dep't 1994); *see also M.J. Woods, Inc. v. Conopco, Inc.*, 271 F.Supp.2d 576, 583 (S.D.N.Y. 2003). An attorney is not liable in simple negligence to a third party absent privity of

contract. *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.*, 755 F.Supp 1195, 1200 (S.D.N.Y. 1989). However, an attorney is liable for harm caused by professional negligence to a third party not in contractual privity if the attorney has committed fraud, collusion, or a malicious act. *Id.*; *see also Viscardi v. Lerner*, 125 A.D.2d 662, 664 (2d Dep't 1986).

Plaintiffs have admitted that they are not in privity with the defendants in the amended complaint stating: "[t]he plaintiffs are not in privity with the defendants or the defendants lawyers, however, an attorney may be sued and liable for legal malpractice when they are to have alleged [sic] in fraud, deceptive or other illegal actions and behavior towards the plaintiffs".[6] (Am. Compl. at ¶ 254). As the Court has dismissed the allegations of fraud, the legal malpractice cause of action must also be dismissed.

Accordingly, defendants' motion to dismiss the seventh cause of action is granted.

**G. Injunctive Relief (First Cause of Action)**

In the first cause of action, plaintiffs seek injunctive relief based on defendants' alleged fraudulent and otherwise illegal conduct. As this Court stated in *Sweringen v. NYSDRA*, 2006 WL 2811825, at *8 (N.D.N.Y. 2006), because there are remaining viable causes of action in the amended complaint, defendants are not entitled to dismissal of the first cause of action at this time. Accordingly, defendants' motion to dismiss the first cause of action is denied.

## DEFENDANTS' MOTION FOR SANCTIONS

Defendants Whiteman and Levine seek an award of sanctions against plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the inherent

---

[6] The defendant IMAP is not a law firm and Charlotte Carter is not a named defendant in this action. As such, claims of legal malpractice against this entity and individual are improper. *Ross v. FSG PrivatAir, Inc.*, 2004 WL 1837366, at *7 (S.D.N.Y. 2004).

power of the Court.[7] The defendants argue that Mr. Aretakis' knowledge as an attorney is imputed to his client and therefore, the complaint has no merit and is frivolous.

Pursuant to Rule 11,

"[t]he signature of an attorney . . . constitutes a certificate by him that he has read the pleading, motion or other paper [and that,] to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass. . .." Fed. R. Civ. P. 11.

"[S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985). Sanctions will be imposed only when it is "patently clear that a claim has absolutely no chance of success". *In re Air Disaster at Lockerbie, Scotland, On Dec. 21, 1988*, 144 F.R.D. 613, 616 (E.D.N.Y. 1992) (quoting *Eastway*, 762 F.2d at 254).

Rule 11 authorizes a court to sanction an attorney who violates his certification that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions [in the pleadings] are warranted under existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2), (c); *see also Hoatson v. New York Archdiocese*, 2007 WL 431098, at*9 (S.D.N.Y. 2007). Rule 11, therefore, imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of

[7] In the plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss, plaintiffs request that the Court "sanction the defendants". The plaintiffs have not complied with N.D.N.Y.L.R. 7.1(c) and therefore, the relief requested in the Memorandum of Law will not be considered by the Court.

a pleading" before actually signing it. *Hoatson*, 2007 WL 431098, at*9 (citations omitted). Limiting the application of Rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule. *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986).

In determining whether the attorney's inquiry was reasonable in light of the circumstances, the Court must apply an objective test of reasonableness. *Id*. The court is to avoid hindsight and doubts as to the viability of a signed pleading are to be resolved in favor of the signer. *Id*.; *see also Norris v. Grosvenor Mktg., Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986). The Advisory Committee Notes accompanying Rule 11 are particularly helpful in listing factors for making a sanction determination:

> "Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants."

Fed. R. Civ. P. 11, Advisory Committee Notes; *see also Hoatson*, WL 431098, at *9 (conduct sanctionable as the bulk of the allegations dealing with sexual abuse are wholly irrelevant to RICO and Title VII claims, and admittedly without basis in law).

Defendants have also requested that the Court impose sanctions pursuant to 28 U.S.C. § 1927 and its "inherent authority to control proceedings before it". In contrast to Rule 11, an award of sanctions under these theories requires a finding of bad faith. Pursuant to 28 U.S.C. § 1927, the court may require any attorney to pay costs if he or she "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "To impose sanctions [pursuant to 28 U.S.C. § 1927] . . . , the trial court must find clear evidence that (1) the offending party's claims were entirely

meritless and (2) the party acted for improper purposes." *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 626180, at *4 (S.D.N.Y. 2004) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000).

A district court may order the imposition of sanctions under 28 U.S.C. § 1927 and the court's inherent power, if it finds bad faith on the part of the offending attorney. *In re Air Disaster,*144 F.R.D. at 616 (citing *McMahon v. Shearson/Am. Exp., Inc.*, 896 F.2d 17, 23 (2d Cir. 1990)). "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *In re Air Disaster,* 144 F.R.D. at 616 (quoting *Oliveri,* 803 F.2d at 1273.

Applying these standards, there is no clear showing of bad faith or improper purpose on the part of plaintiffs' counsel in commencing the within action. In addition, resolving all doubts in favor of the signer and applying a test of reasonableness, the Court determines that sanctions are not appropriate pursuant to Rule 11. The Court has denied portions of the defendants' motion to dismiss. As such, the complaint contains five (5) viable causes of action at this time. As such, the Court cannot state, at this time, that the complaint is without merit or frivolous.

Defendants allege that the complaint is frivolous because plaintiffs' counsel knows plaintiffs cannot plead detrimental reliance on statements by defendants concerning the "independence" of the IMAP program. Specifically, defendants assert that plaintiffs' counsel knew his clients were aware of the alleged conflict of interest complained of herein and entered the program anyway. In furtherance of this argument, defendants contend that knowledge of the "true nature" of the IMAP program possessed by plaintiffs' counsel, John Aretakis, who also represents the *Sweringen* plaintiffs is imputed to plaintiffs in this case.

With respect to the "knowledge" of plaintiffs' counsel, the same cannot be imputed to the client(s) if the knowledge is received by the attorney while working outside the scope of his employment unless it would violate no duty for him to disclose the matter. *In re Penn Central Comm. Paper Litigation*, 61 F.R.D. 453, 459 (S.D.N.Y. 1973). The knowledge obtained by Mr. Aretakis while representing other plaintiffs prior to his representation of the plaintiffs herein may not be imputed to the clients as it would violate a professional duty to reveal the matter acquired even though Mr. Aretakis was employed by the other client with respect to the same subject matter. *Id.*; *see also* 7A C.J.S. *Attorney & Client* § 224 (2007); 7 Am. Jur. 2d *Attorneys at Law* § 156 (2007).

Jaufman entered IMAP in January of 2006. (Dkt. No. 23) Mr. Aretakis was retained by Jaufman in April of 2006.[8] (Dkt. No. 23) Therefore, even assuming that any knowledge possessed by Mr. Aretakis may be imputed to Jaufman, that knowledge could not be imputed until six (6) months after Jaufman entered IMAP.

Accordingly, defendants motion for sanctions is denied.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss the complaint with respect to the second cause of action (fraud) is granted; and it is further

**ORDERED** that defendants' motion to dismiss the complaint with respect to the seventh cause of action (legal malpractice) is granted; and it is further

[8] The record before the Court does not contain any information regarding when the John Doe(s) plaintiff(s) were retained by Mr. Aretakis or when they entered IMAP.

**ORDERED** that defendants' motion to dismiss is otherwise denied it its entirety; and it is further

**ORDERED** that defendant Whiteman's motion for summary judgment is denied with leave to refile; and it is further

**ORDERED** that John Doe(s) plaintiff(s) must move to file a second amended complaint properly identifying the plaintiff(s), on or before October 28, 2007; and it is further

**ORDERED** that defendants' motion for sanctions is denied.

**IT IS SO ORDERED.**

Dated: September 28, 2007

Norman A. Mordue
Chief United States District Court Judge

N A M